ADKINS v. L. L. COLE & SON.

4-8540                                    211 S. W. 2d 885

Opinion delivered May 31, 1948.

Rehearing denied June 28, 1948.

J. H. Moody and W. J. Dungan, for appellant.

John D. Eldridge, Jr., for appellee.

Ed. F. McFaddin, Justice. The sole question on this appeal is: was there sufficient evidence to take the case to the jury on the issue, whether the driver of appellant's vehicle was within the scope of employment at the time of the collision?

Appellant lives in Bald Knob, and owns farms between that city and Augusta, another city 12 miles to the east. One farm is the Rio Vista Farm, and is six miles from Bald Knob; and another is the Green Tom Lake Farm, nine miles from Bald Knob. In March, 1947, appellant instructed his employee, T. B. Cathey, to take some seed and feed in appellant's truck to the Rio Vista Farm. After reaching that farm and delivering the load, Cathey went on to Augusta instead of returning to Bald Knob. A few hours later, in returning from Augusta, and while driving appellant's truck on the highway, and in front of the Green Tom Lake Farm, Cathey had a collision with appellee's truck.

When appellee sued for damages, appellant's defense—insofar as this appeal is concerned—was, that Cathey was outside the scope of employment at the time and place of the collision. The trial court submitted this issue to the jury. Appellant insists that he was entitled to an instructed verdict. He presents here only his assignment No. 4 in the motion for new trial, which assignment reads:

" . . . the court committed error in not instructing a verdict for the defendant upon the defendant's requested instruction No. 1 as follows:

" 'The defendant moves the court to direct a verdict for him because the driver of defendant's truck was not acting within the scope of his employment at the time of the collision between the truck of plaintiff and the truck of defendant, as shown by the undisputed evidence' . . . ''

In the recent case of *Ford & Son Sanitary Co.* v. *Ransom, ante,* p. 390, 210 S. W. 2d 508, we had an appeal in which—as here—the sole issue was, whether there was sufficient evidence to take the case to the jury on the question of scope of employment. In that opinion we said:

" . . . when the plaintiff showed that the truck which inflicted the injury was owned by the defendant company, and was at that time being driven by the said

defendant company's regular employee, then such proof raised a temporary presumption that the employee was in the scope of his employment. The defendant company, to avoid liability, was then obliged to introduce substantial proof directed to the negation of scope of employment. When the defendant company introduced such proof, the presumption (arising from ownership and driving of the vehicle) had served its purpose, and disappeared; so that if—independent of such presumption—there was no evidence to dispute the defendant's proof, and if such proof contained no substantial contradictions in itself, then there would have been no evidence to take the case to the jury on the 'scope of employment' theory. But if—independent of the presumption—the defendants' proof was substantially contradicted by the plaintiff's proof or by inconsistencies in the defendant's own proof, then the issue of scope of employment would be for the jury.''

In the case at bar the appellant introduced evidence tending to show that Cathey had entirely departed from the scope of employment. On the other hand, appellee introduced evidence tending to show that the defense of ''scope of employment'' was inconsistent with his previous declarations. The state policeman who investigated the collision talked with both of the parties at the scene of the accident; and testified:

''Q. You say Mr. Adkins told you Mr. Cathey was his driver, do you mean that he told you he was driving for him then or was in his employ? A. I went there; and there were several cars there and I came down between the corn trucks of Mr. Cole's and Mr. Adkins'; and Mr. Adkins said one was his, and Mr. Cole said one was his. Q. Mr. Adkins didn't tell you that Mr. Cathey was on business for him? A. He said he was working for him.''

Furthermore, appellee Cole testified as to his conversations with Adkins at the scene of the collision, where each had been called. This is Cole's testimony:

''Q. State to the jury the substance of your conversation with Mr. Adkins and Mr. Cathey while Mr. Adkins

was present. A. Of course, we all were interested in how it happened. I heard my driver's story and his driver's story and that was about all. It was obvious where my boys had been. Q. Did Adkins admit the ownership of the truck? A. Yes, sir. Q. What did he say about Cathey? A. He said that he was working for him. I picked up the fact that Cathey had come to the farm to bring some feed.

.    .    .    .    .

"Q. Are you familiar, approximately, with the location of Mr. Adkins' farm? A. Yes, sir. Q. Where did the accident happen? A. Right along beside his farm; I didn't know it was his property then, but I have learned later.

.    .    .    .    .

"Q. Adkins told you Cathey was working for him? A. Yes, sir. Q. Working for him that day? A. Yes, sir."

When appellant testified, he did not deny the testimony of the state policeman and Cole as heretofore copied. In fact, appellant admitted that Cathey had no instructions as to returning to Bald Knob, and testified as follows:

"A. I sent Mr. Cathey to the farm, I believe with some seed and feed and maybe some tools. Q. He said hay? A. Well, hay is feed; I had some hay in Bald Knob in a big barn, a big warehouse. Q. Where did you send it? A. To Rio Vista. Q. In your truck? A. Yes, sir. Q. Did he go to your farm at Rio Vista? A. I suppose he did. Q. What was he supposed to do after he delivered that; did you tell him to do anything else? A. No, I didn't tell him to do anything. Q. Was he supposed to go down there and take that and come back to Bald Knob? A. As far as I know, I didn't tell him to do anything different."

From the immediately foregoing testimony, the jury could have inferred that Cathey, in addition to carrying feed to the farm at Rio Vista, also had tools for the farm in front of which the collision occurred—the Green Tom

Lake Farm. From the testimony of the state policeman and the appellee, the inference could reasonably have been drawn that Adkins admitted at the scene of the collision that Cathey was in the scope of his employment at that time and place. Such admission is certainly inconsistent with the defense now made that Cathey was then outside the scope of his employment; and such inconsistency made a jury question.

The matter may be summarized: the fact that Cathey was driving appellant's truck raised a temporary presumption that Cathey was in the scope of his employment, and—to avoid liability—appellant was obliged to introduce substantial proof directed to the negation of scope of employment; but the testimony introduced by the appellee, as heretofore detailed, contains statements of the appellant inconsistent with the defense of scope of employment. In view of such inconsistency, a question was made for the jury under the rule stated in *Ford* v. *Ransom, supra.*

The judgment of the circuit court is affirmed.

The Chief Justice dissents.